Ulises. TESORO, Plaintiff,

v.

Aristedes ZAVARAS, Donice Neal, Sgt. Mccall, Lt. Finney, Lt. McFee, Sgt. Early, Dr. Neufeld, Major Watkins, Major Hadley, Capt. Thompson, Lt. Zupan, Lt. Martinez, Officer Bennett, Nurse Nancy, Sgt. Rodenbeck, Lt. Carlton, Sgt. Perko, Lou Hesse, and Major Foshee, Defendants.

No. Civ.A. 96–K–104.

United States District Court,
D. Colorado.

May 6, 1999.

Harry L. Hobson, Holland & Hart, LLP, Denver, CO, David Arnold Martinez, David A. Martinez, Attorney at Law, Denver, CO, for Plaintiff.

Grace A. Belsches, Belsches and Associates, LLC, Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This prisoner civil rights action is before me on various objections to the Magistrate Judge's Recommendation dated August 20, 1998, that summary judgment enter on certain of Plaintiff's claims against certain named Defendants and that summary judgment be denied as to "all remaining claims set forth in Plaintiff's Complaint."

Vague and collective references to "Defendants"—of which there are 19 named—in Plaintiffs' filings and in the Recommendation of the Magistrate Judge make it difficult to determine precisely which claims were recommended to go forward against which Defendants. As my review under Fed.R.Civ.P. 72(b) is largely *de novo*,[1] I have revisited each of the issues and rule as follows.

## I. FACTS AND PROCEDURAL HISTORY.

Plaintiff Ulises Tesoro is a Cuban born individual serving a life sentence in the custody of the Colorado Department of Corrections (DOC) at the Colorado State Penitentiary (CSP) in Canon City, Colorado. Tesoro initiated this action on January 18, 1996, by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 against nineteen DOC and CSP officials, supervisors and staff members and "any other John or Jane Does fairly included."[2] The Complaint set forth a chronology of incidents beginning in 1992 involving racial bias, the use of racial slurs and race-based threats and denials of medical attention. According to the Complaint, this bias culminated in a 1995 incident in which Defendants McCall and Finney, together with other unidentified guards and officers, assaulted Tesoro during a strip-search of his cell,[3] twisting his penis and testicles and stating they wanted to see all "Black and spanish people dead." Compl. ¶ 1. Tesoro claimed these incidents violated his rights under the Eighth Amendment to be free of the use of excessive force and to adequate medical care and deprived him of his equal protection rights under the Fourteenth Amendment.

---

1. Plaintiff objects to every recommendation the Magistrate Judge except the recommendation that claims against Defendant Hesse be dismissed as time-barred under Colorado's two-year statute of limitations applicable in § 1983 actions.

2. None of the alleged John or Jane Does was ever identified or served with the Complaint in this action. They were never made parties and no further reference to them will be made.

3. During a strip cell search, everything is removed from the cell except for a mattress and the inmate is stripped of clothing (Objection to Recommendation at 1–2).

On February 6, 1996, the district judge originally assigned to this case issued a minute order for a report pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978) ("Martinez Report") requesting more facts from Defendants regarding Tesoro's claims. Defendants filed an initial and supplemental "Martinez Report Concerning Medical Claims" and a "Martinez Report Concerning Non–Medical Claims,". and Tesoro filed a written response to them. In August 1996, pursuant to the then-recently effective Prison Litigation Reform Act of 1995, the judge issued an Order dismissing Tesoro's § 1985 claim as legally frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) and referring the remaining § 1983 for an initial conference with a special master. The order also included a ruling denying Tesoro's request for appointment of counsel "at this time."

On September 12, 1996, a designee of the Office of the Attorney General of Colorado entered her appearance on behalf of 17 of the 19 Defendants (omitting only Lt. McFee and Lou Hesse)[4] and waiving service as Zavaras, Neal, McCall, Finny, Early, Neufeld, Watkins, Hadley, Thompson, Zupan, Martinez, Rodenbeck, Carlton, Perko, and Foshee. Am. Entry of Appearance, ¶ 1. Counsel declined to waive service for Officer Bennett, Lou Hesse and Nurse Nancy.[5] *Id.* ¶ 2.

On September 20, 1996, after an initial telephone conference with Tesoro and defense counsel, the special master issued a Report and Recommendation finding significant areas of factual dispute and urging the appointment of Spanish-speaking counsel for Tesoro because his difficulties with the English language made it "impossible at this time either to narrow the range of disputes or to frame discovery recommen-

dations." Report and Recommendation (9/20/96) at p. 2. Upon review of the Recommendation, the district judge ordered the case held in abeyance for 45 days to allow for a referral to the Federal Pro Bono Mentoring Program to locate Spanish-speaking counsel. Order (10/3/96).

While the case was stayed pending referral, counsel filed an Answer on behalf of the DOC Defendants who had been served and Hesse, the case was reassigned to me, and I ordered the case referred to the Magistrate Judge. The Magistrate Judge attempted to address several handwritten requests and documents filed by Tesoro during this time entitled "affidavit of cruel injury" and "for help very urgent [for] all this kinds of injustice against me," denying the "motions" based on difficulty in discerning relief requested but doing so "without prejudice to fil[ing] a detailed motion for preliminary injunction or similar [request for] relief." *See* Order (filed 3/11/97).

Finally, on March 28, 1997, counsel with the Federal *Pro Bono* Mentoring Program entered their appearance on Tesoro's behalf. It appears no action was taken until May 27, 1997, when the Magistrate Judge, on his own motion, ordered copies of all pleadings sent to Tesoro's counsel. Telephone conferences were scheduled, vacated and rescheduled over the next several months, until November 4, 1997 when the Magistrate Judge was advised still more time was needed to complete discovery and issued an order setting a discovery cutoff date and dates for the filing of dispositive motions. In the interim, Tesoro continued to submit directly to the court affidavits and motions "concerning more abuse, racism," reporting "threat, intimidation extreme racism, discrimination [sic], homilla-

---

4. The omission appears to have been an oversight given counsel's arguments on behalf of these Defendants in her Motion to Dismiss.

5. Counsel refused to waive service as to "Officer Bennett" on grounds there were "two Officer Bennetts," both female, neither of whom could be identified as having been in-

volved in the matter, "Lou Hesse," on grounds he was retired and no longer with DOC, and "Nurse Nancy," requesting further identification before service would be waived. None of these Defendants has ever been served, although the Answer filed on behalf of the DOC Defendants included Lou Hesse.

tion [sic] assault ...," and seeking "justice in this place without any kind of help where people are kill me littles to littles and cold blood." *See* Affidavits dated 7/30/97, 12/5/97 and 12/8/97.

On December 29, 1997, Tesoro's appointed counsel filed a Motion for Physical Examination(s) of Plaintiff and Motion for Discovery and to Compel, seeking an order and funds for an examination of Plaintiff by a doctor "specializing in urinology [sic]" as well as documentary and other discovery based on Plaintiff's claims that the 1995 assault and inadequate medical care thereafter had resulted in damage to his urinary tract and genital area. The Magistrate Judge immediately ordered a telephone hearing "with counsel only" to examine all discovery issues and, on January 28, 1998, issued Orders denying the request for funds without prejudice and denying document discovery requests as lacking any legal basis under the Rules of Civil Procedure. Notwithstanding these rulings, the Magistrate Judge later granted Tesoro's Motion for Transportation by Defendants for Urological and Gastro–Enterological Examinations of Plaintiff and the examinations were completed. *See* Order dated 3/2/98.[6] After continued wrangling, discovery was ultimately completed and Defendants filed the instant Motion for Summary Judgment on behalf of Defendants Zavaras, Neal, McCall, Finney, McFee, Dr. Neufeld, Watkins, Hadley, Thompson, Zupan, Martinez, Rodenbeck, Carlton, Perko, and Foshee. Defendants Early, Bennett, Nurse Nancy, and Hesse were omitted from the caption. The omission of Early is unexplained, given that counsel waived service as to Early and filed an Answer on his behalf. The omission of Hesse appears to have been an oversight, given that an Answer and affirmative defenses were filed on Hesse's behalf and argu-

ments on those defenses were included in the Motion.

### A. *Plaintiff's Claims.*

In chronological order, Tesoro's Complaint set forth the following allegations:

1. On June 15, 1992, Hesse and Foshee placed Tesoro in administrative segregation for 37 days "without any reason" and without a hearing in violation of DOC Code of Penal Discipline Reg. 203–1 (only allegations as to Hesse and Foshee);

2. On September 25, 1993, Tesoro complained to Neal, as Warden of CSP, of racial discrimination and lack of medical attention;

3. On May 27, 1994, Hadley made racist statements to Tesoro;

4. On February 1, 1995, Perko made racist statements to Tesoro and said he "would kill Mr. Tesoro!";

5. On June 11, 1995, McCall and Finney came to Tesoro's cell with 5 or 6 unidentified other officers after he requested medical assistance and assaulted him by twisting his penis and testicles and threatening to kill Tesoro and his family. Tesoro was denied medical treatment after the assault. (Tesoro later clarified that this was the strip-cell incident of May 11, 1995, upon which his Eighth Amendment excessive force claim is based);[7]

6. On June 18, 1995, Watkins made racist comments to Tesoro;

7. On August 1, 1995, Carlton refused to provide case management assistance on grounds he "does not like" Cubans or Blacks, claimed he was a member of the KKK, and suggested Tesoro "kill himself";

8. On August 21, 1995, Martinez and Zupan used racial epithets against Tesoro

---

6. The urologist's report, dated 4/14/98, detailed a thorough examination and ultrasound but found "no evidence of injury" or explanation for "why [Tesoro] has a problem starting urination."

7. *See* Martinez Rept. dated 4/17/96 (Ex. 5, Pl.'s Opposition to Mot. for Summ.J).

during a disciplinary proceeding and refused him an interpreter;[8]

9. On September 13, 1995, Dr. Neufeld stated he would refuse Tesoro medical treatment if he filed a lawsuit against CSP and told him to "go back to Cuba," Tesoro's complaints to Superintendent Neal, Watkins, Hadley and Thompson received no response;

10. On September 29, 1995, Bennett. through away his family pictures, made racist comments, told Tesoro "I can do whatever I want because I am white," and said "go back to Cuba." Also on September 29, 1995, "Defendants" refused to feed Tesoro or allow him to shower, broke his eyeglasses and refused to replace them for three months and Nurse Nancy threatened to kill Tesoro, made racist statements and refused him medical attention;

11. On October 4, 1995, McFee, upon receiving kites from Tesoro, made racist comments to Tesoro directly and over the loudspeaker and refused to give him food or allow him to take a shower as requested;

12. On November 8, 1995, Early, Rodenbeck and McFee made racist comments to Tesoro and told him if he didn't like it, he could "kill himself";

13. On November 9, 1995, McFee and Early made racist remarks and threatened to stop his mail if Tesoro complained about them; and

14. On unspecified dates, Tesoro complained to Neal, Hadley, Thompson, Carlton, McFee, and wrote five letters to Zavaras, without any relief.

Tesoro claims this conduct violated his rights under the Eighth and Fourteenth Amendments to be free of cruel and unusual punishment in prison, to equal protection of the laws, and to due process.

### B. *The Motion for Summary Judgment and Recommendation.*

Upon review of Defendants' Motion for Summary Judgment and the responsive briefs thereto, the Magistrate Judge issued his Recommendation that the Motion be granted in part and denied in part. Specifically, the Magistrate Judge recommended that summary judgment be granted in favor of Hesse and Neal on statute of limitations grounds; in favor of Zavaras, Neal, Watkins, Hadley, Neufeld, Thompson, Zupan, Martinez, Carlton and Foshee on the Eighth Amendment claim of excessive physical force for failure to demonstrate personal participation of any of them; in favor of Zavaras, Neal, Watkins, Hadley, Thompson, Zupan, Martinez, Carlton, Foshee, Rodenbeck, Finney, McFee, Neufeld and Perko on the Eighth Amendment claim of deliberate indifference to serious medical need; to Neal, Zavaras, Hadley, Thompson, Martinez, Perko, Finney, Watkins, Carlton, McFee, Early, Zupan, Rodenbeck, Neufeld and Foshee on the Fourteenth Amendment claim to equal protection; and to "Defendants" on the Fourteenth Amendment due process claim. Finding insufficient evidence to create a triable question as to whether Defendants violated Tesoro's constitutional rights, the Magistrate Judge also concluded Defendants collectively were entitled to qualified immunity under the standard articulated in *Salmon v. Schwarz,* 948 F.2d 1131, 1136 (10th Cir.1991). Finally, and without specifying which Defendants or claims would survive such a ruling, the Magistrate Judge recommended that "summary judg-

---

**8.** It is unclear whether Tesoro was referring to the May 15, 1995 disciplinary proceeding conducted in the wake of the May 11 strip-cell incident or some other disciplinary proceeding. Counsel for Plaintiff did not address this allegation in their briefs. Documentary evidence submitted in support of Tesoro's excessive force claim arising out of the May 11 incident included a Disposition of Charges dated 5/19/95, in which Tesoro was found guilty of assault and of disobeying a lawful order and received 22 days punitive segregation as a result. (Ex. 9 to Pl.'s Opposition to Mot.Summ.J.) There is nothing in this document or anything else filed by Plaintiff to demonstrate he either asked for or was denied a Spanish-speaking interpreter at this hearing.

ment be denied as to all remaining claims set forth in Plaintiff's Complaint."

In accordance with Rule 72(b), Fed. R.Civ.P., Tesoro filed a written Objection to various aspects of the Recommendation. Tesoro objects to the entry of summary judgment in favor of Neal (but not Hesse) on statute of limitations grounds and objects to the recommendation that judgment enter in favor of the named Defendants on his Eighth Amendment claim arising out of the May 11, 1995 strip cell search. Tesoro contends disputed facts as to what did or did not happen that day preclude entry of summary judgment against those Defendants who participated directly, and argues his written complaints to supervisory Defendants Zavaras and Neal constitute the necessary "affirmative link" to the incident required under *McClelland v. Facteau*, 610 F.2d 693, 696 (10th Cir.1979). Similarly, Tesoro claims factual disputes preclude entry of summary judgment on his Equal Protection and Eighth Amendment claims of deliberate indifference to his medical needs claims as well. Tesoro also objects to the Magistrate Judge's conclusions regarding the issue of qualified immunity, and argues disputed facts as to Defendants' liability for the constitutional violations alleged precludes entry of summary judgment on that defense.

Finally, Tesoro seizes the opportunity presented by the negative definition of "remaining claims" as being any claims pending against Defendants in whose favor summary judgment was not entered, Tesoro concludes the omission of McCall, Bennett and Nurse Nancy in the Recommendation means his claims against those Defendants "will go to trial."

## II. *MERITS.*

My review is *de novo* under the Rule 56(c) standard for summary judgment.

Summary judgment is appropriate under this standard

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c).

### A. *Eighth Amendment Excessive Force Claim.*

The evidence indicates only two of the named Defendants participated in the May 11, 1995,[9] strip-cell incident—Sgt. McCall and Lt. Finney. *See* 5/15/95 Reviewing Supervisor Incident Investigation Report, 5/24/95 (Pl.'s Opposition to Defs.' Mot. Summ.J., Ex. 4); 5/24/95 Mem. from Burbank to Neal (review of incident naming Finney, McCall as officers who "maintained control over inmate Tesoro out on the tier" while other officers (identified as Officers Nethercot, Rogers, Shea, and Pittman) "proceeded to strip the [sic] Tesoro's cell") (*id.*, Ex. 6a); Finney/McCall Incident Repts. (*id.*, Exs. 6b & c); Tr. of 4/7/98 Interview with McCall (*id.*, Ex. 8); Defs.' 3/6/96 Martinez Rept. (*id.*, Ex. 11). No evidence has been presented linking the other Defendants to the incident and summary judgment on this claim will be entered in their favor.

As to McCall and Finney, however, the evidence is sufficient under the balancing test articulated in *Mitchell v. Maynard*, 80 F.3d 1433, 1440 (10th Cir.1996), to allow the claim to proceed. Tesoro alleges Finney and McCall twisted his penis and testicles while he was handcuffed and offering no resistance, and Finney and McCall deny this. Given that courts under *Maynard* must balance the need for appli-

---

9. The precise date of the incident has been given as June 15 (Plaintiff's Complaint), May 15 (Plaintiff's briefs and other submissions), and May 11 (Incident Reports 5/11/95) (Exs. 6b & c, Pl.'s Opposition to Defs.' Mot. Summ.J.' 3/6/96 Martinez Report of Defendants (*id.*, Ex. 11)). For purposes of this Order, I use the May 11, 1995 date reflected in the incident reports and corroborated by the weight of the evidence.

cation of force with the amount of force used, these disputed accounts of the incident preclude entry of summary judgment in these Defendants' favor either directly or on their defense of qualified immunity.

■■■ With respect to supervisor liability Defendants Zavaras and Neal, the evidence is insufficient to withstand summary judgment on Plaintiff's excessive force claim. A supervisory employee is liable for the constitutional violations of subordinates only if he participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), *applied in Benglen v. Zavaras et al.,* 7 F.Supp.2d 1171, 1174–75 (D.Colo.1998) (Kane J.).[10] Tesoro has offered no evidence of any kind from which an inference that Neal participated in the incident or knew of and deliberately ignored a threat to Tesoro. The three pieces of evidence involving Neal (the 5/24/95 Burbank Memorandum a 5/12/95 Memorandum from Neal to the Inspector General (Ex. 20, Pl.'s Opposition to Defs.' Mot.SummJ.) and an 11/9/95 Memorandum in response to Tesoro's complaints of racial discrimination and abuse from staff) postdate the incident and form no basis for a supervisory liability claim for the incident itself.

The evidence Tesoro offers in support of his supervisor liability claim against Zavaras similarly fails to create the inferences necessary to withstand summary judgment. Tesoro relies on a series of five letters signed Zavaras and addressed to Tesoro from June 1993 to November 1995. These letters acknowledge receipt of correspondence from Tesoro, which is not provided. *See* Letters (Exs. 14–18, Pl.'s Opposition to Defs.' Mot.Summ.J.). The first letter, dated June 28, 1993, is a tailored response to what appears to have

been a complaint from Tesoro about having been placed in Administrative Segregation and the loss of a TV or radio. (Ex. 14.) The four later letters are form responses acknowledging the receipt of otherwise unidentified correspondence from Tesoro and stating the correspondence would be reviewed by "the appropriate Department staff for response." (Exs.15–18.) Nothing in the letters reveals the substance of Tesoro's complaints to Zavaras, and Tesoro does not allege that they related in any way to the use or threatened use of excessive force against him by prison guards or anyone else. Moreover, two of the four letters postdate the incident and can form no basis for supervisor liability for it.

### B. Deliberate Indifference to Serious Medical Need.

■■■ The Eighth Amendment's prohibition against cruel and unusual punishment also precludes prison officials from acting with deliberate indifference to the serious medical needs of inmates. *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Other than Nurse Nancy, who is not a party defendant, the only individual identified by name as having been deliberately indifferent to Tesoro's medical needs is Dr. Neufeld. Tesoro appears to be claiming both that he was denied adequate care for urological problems suffered after the May 1995 incident generally, and that Dr. Neufeld specifically threatened to refuse him future medical treatment if he proceeded with his lawsuit. However, the only evidence in the record relates to an eye appointment that was canceled in September 1993 (*see* 11/23/93 Mem. from Neal to Colorado State Health Dept. official Ludington re cancellation, Ex. 13a to Pl.'s Opposition to Defs.' Motion Summ.J.) and the

---

**10.** The 1979 *McClelland v. Facteau* case on which Tesoro relies is outdated and unpersuasive. It involved an action against a police chief based on a failure to train theory of liability, and provided an early statement of the personal participation requirement later refined in *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Tesoro's claims against Zavaras or Neal do not involve failure to train allegations and *McClelland* is inapposite.

negative urological examination Tesoro underwent in March 1998 during the discovery phase of this lawsuit. (*See supra,* n. 7.)

Tesoro has offered no legal support for his claim that Neufeld's alleged threat to withhold medical treatment constituted an Eighth Amendment violation. There is no evidence in the record from which the inference could be drawn that Tesoro actually had a "serious medical need" to which Dr. Neufeld was "deliberately indifferent." Absent such evidence, the entry of summary judgment against Tesoro on this claim is appropriate.[11]

### C. *Fourteenth Amendment Claim(s).*

Tesoro's remaining allegations and evidentiary submissions relate to what appears to be two separate theories of relief under the Fourteenth Amendment: (1) that the ongoing racial threats and epithets he suffered deprived him of his equal protection rights; and (2) that he was refused a Spanish interpreter at an unidentified disciplinary proceeding in violation of his due process rights. While the Recommendation included discussion of Tesoro's allegations of "Verbal Abuse" and due process violations in an unidentified "Disciplinary Hearing" (recommending summary judgment enter against Tesoro on both theories of relief) I see no reason to have done so. It appears Tesoro has abandoned these claims but, even if he hasn't, his allegations are so vague and his theories of relief so undeveloped as a matter of law, that speculating as to their meaning or effect serves no purpose. Accordingly, summary judgment shall enter in favor of Defendants and against Tesoro on his Fourteenth Amendment claims for relief as well.

### III. *CONCLUSION.*

Based no the foregoing, my rulings are as follows:

1. The individuals identified as "Nurse Nancy" and "Officer Bennett" have never been served and are DISMISSED as party Defendants to this action.

2. There having been no objection to the Magistrate's Recommendation that Plaintiff's claim(s) against Defendant Hesse are time-barred, that aspect of the Recommendation is ADOPTED as an order of the court and Plaintiff's claim(s) against Defendant Hesse are DISMISSED.

3. Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part. Plaintiff has presented sufficient evidence in support of his Eighth Amendment excessive force claim against Sgt. McCall and Lt. Finney to withstand summary judgment under a Fed.R.Civ.P. Rule 56(c) standard and Defendants' Motion for Summary Judgment is DENIED as to that claim against those two Defendants. Defendants' Motion is GRANTED in all other respects.

Accordingly, this case shall proceed on Plaintiff's 42 U.S.C. § 1983 claim that Defendants McCall and Finney used excessive force against him during the May 1995 strip-cell incident which deprived him of his rights under the Eighth Amendment to the United States Constitution. This matter shall be referred to a magistrate judge for additional pretrial proceedings up to and including the submission of a Final Pretrial Order limited to the sole remaining claim.

---

11. To the extent Tesoro purports to assert claims for supervisor liability against Zavaras and others for deliberate indifference to serious medical need, those claims fail for lack of any competent evidence to support them.